IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| KEIRAND R. MOORE,<br>    Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL<br>AUTOMOBILE INSURANCE<br>COMPANY,<br>    Defendant. | Case No. 1:15-cv-01058-JEH |

**Order**

Now before the Court are the Defendant's Motion for Judgment on the Pleadings as to Moore's So-Called "EEOC Violation" & State Law Wrongful Termination Claims (Doc. 65) and its Motion for Summary Judgment on Moore's Breach of Contract Claim (Doc 67). The Motions are fully briefed and for the reasons set forth below, the Defendant's Motions are GRANTED.[1]

On February 3, 2015, Plaintiff Keirand R. Moore (Moore) filed his Complaint (Doc. 1) against Defendant State Farm Mutual Automobile Insurance Company (State Farm) raising various potential claims as identified by the Court in its previous orders. *See*, *e.g.*, 2/2/2016 Order (Doc. 27); 5/22/2017 Order (Doc. 57). The general thrust of his Complaint was that he was discriminated against because he is black and he was subjected to retaliation for complaining about racism within the company. The Court previously identified as potential claims, among others, an Equal Employment Opportunity Commission (EEOC) violation, wrongful termination, and a violation of State Farm's internal policies. State Farm moves for judgment on the pleadings as to the claims of an EEOC

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 38, 39).

1

violation and wrongful termination. State Farm moves for summary judgment as to Moore's state law breach of contract claim based upon a violation of State Farm's internal policies. The Court will address each Motion in turn.

**I**

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties have filed the complaint and answer. FED. R. CIV. P. 12(c) ("After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings); *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Rule 12(c) motions are reviewed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). Thus, the question is whether the complaint states a claim to relief that is plausible on its face. *Id.* at 728. "Factual allegations must be enough to raise a right to relief about the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, "[T]he plaintiff must allege 'more than a sheer possibility that a defendant has acted unlawfully.'" *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**A**

Here, State Farm first essentially argues that Moore does not state a plausible claim for relief where there is no such recognized claim for EEOC violations in the first instance. State Farm argues that there is no right of action for an EEOC violation because the Commission enforces Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and does not impose obligations independent of Title VII on State Farm as concerns Moore's employment. State Farm is entitled to judgment on the pleadings as to Moore's EEOC violation claim.

First, Moore does not offer any argument relevant to the question of whether there is a right of action for an EEOC violation. Instead, Moore offers a continued narrative on the circumstances underlying his lawsuit. In the "Conclusion" section of his Response to the Motion for Judgment on the Pleadings, Moore states, "The big question in this case is: Can an employer fire someone "at will", [sic] even when it is in violation of EEOC laws regarding retaliation and discrimination?" Plf's Resp (Doc. 75 at pg. 28). He basically concedes he claims *violations of Title VII* rather than violations of the procedures implemented for the enforcement of Title VII. Second, long ago the Seventh Circuit Court of Appeals explained that "[i]t is settled law, in this and other circuits, that Title VII does not provide an express or implied cause of action against the EEOC to challenge its investigation and processing of a charge." *McCottrell v. E.E.O.C.*, 726 F.2d 350, 351 (7th Cir. 1984). Moore's claim for an EEOC violation is dismissed for failure to state a claim upon which relief can be granted.

B

Moore's state law wrongful termination claim must also be dismissed for failure to state a claim upon which relief can be granted. State Farm argues that Moore's wrongful termination claim is preempted by the Illinois Human Rights Act (IHRA) and Title VII which are the exclusive means by which claims of racial discrimination and retaliation for opposing such discrimination are adjudicated. Moore does not argue otherwise but only asserts that "[t]his is a clear case of wrongful termination" where he has been subjected to "racial bigotry" and retaliation.

"The IHRA preempts court claims where the basis for the claim arises from a matter covered under the Act, unless the plaintiff can establish a basis for imposing liability on defendants independent of the Act." *Nelson v. Realty*

3

*Consulting Servs., Inc.*, 431 F. App'x 502, 506 (7th Cir. 2011). Here, Moore's Complaint makes clear that he rests his allegations of wrongful termination upon State Farm's alleged racial bigotry and its retaliation against him for filing charges of racial discrimination with the Illinois Department of Human Rights (IDHR). Thus, none of his allegations or argument in opposition to State Farm's Motion for Judgment on the Pleadings suggest that he can establish a basis for imposing liability on State Farm independent of the IHRA. *See More v. Roadway Express, Inc.*, No. 97 C 6661, 1998 WL 292417, at *7 (N.D. Ill. May 19, 1998) ("Where . . . Illinois provides a statutory remedy for the particular type of misconduct that violates public policy, no independent common law tort is recognized; the person instead must proceed under the statute"). Stated more simply, "Allegations of retaliation for opposing race-based discrimination are not only covered by the IHRA, but are also covered by Title VII." *Jones v. Sabis Educ. Sys., Inc.*, No. 98 C 4252, 1999 WL 1206955, at *10 (N.D. Ill. Dec. 13, 1999). Moore's wrongful termination claim is, as State Farm puts it, an unnecessary addition to his claim that State Farm violated the IHRA and Title VII when his employment was terminated.

## II

In its Motion for Summary Judgment, State Farm argues two points: 1) Moore's state law breach of contract claim based upon a violation of State Farm's internal policies fails as a matter of law because the home page of those policies contains a disclaimer that employees are employed at-will and that State Farm's internal policies do not constitute a contract; and 2) State Farm's non-retaliation and equal employment opportunity policies reiterate pre-existing legal duties and do not constitute an independent basis for an award of contract damages if violated.

The single undisputed fact is that at the end of Moore's employment on or about April 5, 2014 (per his Complaint), State Farm's Human Resources Policy Manual contained a disclaimer on its home page that reads as follows:

**HUMAN RESOURCES POLICY MANUAL**

**This manual (all provisions within it) serves only to outline State Farm's employment policies and benefit plans for State Farm employees at the time of transmission. State Farm does not intend this manual (all provisions within it) to be considered by any employee:**

- **To be all inclusive**
- **To be an employment contract between State Farm and any employee**
- **To in any way limit the rights of State Farm or its employees to terminate the employment relationship at any time, with or without cause**
- **To be a summary of or substitute for actual plan language of any State Farm benefit plans**

**State Farm will apply and change this manual's provisions at its discretion at any time, with or without notice. As used in this manual, the term "employee" does not include temporary workers or external associates.**

Dft's MSJ (Doc. 67 at pg. 2) (boldface type in original).

Summary Judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323-24. Once the moving party has met its burden, the

opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1993). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories, or admissions that establish that there is a genuine triable issue; she "must do more than simply show that there is some metaphysical doubt as to the material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986), *quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999). However, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson*, 477 U.S. at 255. Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 250.

In his Response to State Farm's summary judgment motion, Moore argues that he referred in his Complaint to State Farm's Code of Conduct and not its employee handbook, and the Code of Conduct has no disclaimer. He argues that Code of Conduct is a mandatory contract and "due to the defendant allowing members of management and their henchmen to discriminate and retaliate against me, they breached the terms of the contract. The [Code of Conduct] clearly states that such behavior will not be tolerated." Plf's Resp (Doc. 75 at pg. 31).

An employee handbook or other employment policies can create enforceable contractual rights if the traditional requirements for contract formation exist. *Weber Shandwick Worldwide v. Reid*, No. 05 C 708, 2005 WL 1651030, at *3 (N.D. Ill. May 12, 2005), *citing Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E. 2d 314, 318 (Ill. 1987). The following elements must be met for a contract to exist: 1) the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made; 2) the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and 3) the employee must accept the offer by commencing or continuing to work after learning of the policy statement. *Id*.

Though Moore indicates in his Response that his Complaint concerns, in part, a breach of State Farm's Code of Conduct rather than a breach of its Human Resources Policy Manual (Manual), the Court must still address State Farm's Manual arguments insofar as they apply to its Code of Conduct. State Farm argues that Moore offers no evidence in support of his Response to the Motion for Summary judgment despite repeated admonitions that he comply with Federal Rule of Civil Procedure 56 and Local Rule 7.1(D) which both provide what a party must do when defending against a summary judgment motion. State Farm argues further that Moore's mere citation to the "State Farm Code of Conduct 2014" without authentication by a supporting affidavit or otherwise does not meet his burden of production. *See Woods v. City of Chi.*, 234 F.3d 979, 988 (7th Cir. 2000) (explaining that a court may consider on summary judgment any material that would be admissible or usable at trial including properly authenticated and admissible documents or exhibits).

State Farm's assertions will not preclude the Court from considering Moore's counter argument as it pertains to the Code of Conduct. It has been said

7

that "[e]ven if a party fails to authenticate a document properly or to lay a proper foundation, the opposing party is not acting in good faith in raising such an objection if the party nevertheless knows that a document is authentic." *Fenje v. Feld*, 301 F. Supp. 2d 781, 789 (N.D. Ill. 2003) (citing cases). The Court here questions whether State Farm objects to Moore's reliance upon the submitted Code of Conduct without a good faith basis for doing so. In any event, the Court will follow State Farm's lead and still consider Moore's Code of Conduct argument.

The entire thrust of Moore's argument is that the Code of Conduct will not tolerate certain activities – retaliation, discrimination – yet State Farm allowed its management and "henchmen" to engage in those very activities and thus breached the terms of that contract. State Farm replies that Moore has offered no evidence that the Code of Conduct can be read in such a way as to meet the first prong of the contract analysis - the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. In *Weber Shandwick*, State Farm's cited case, the district court explained why the code of conduct in that case did not contain clear promissory language. 2005 WL 1651030, at *4. The district court explained that "[g]eneral statements of company policy or practice are too indefinite to create binding contractual obligations." *Id.*, *citing Vickers v. Abbot Laboratories*, 719 N.E. 2d 1101, 1113 (Ill. App. 1999).

Similarly, here, State Farm's Code of Conduct contains general statements of company policy and practice. The Code states, in part:

> While the Code of Conduct cannot address every circumstance, it summarizes into one document many existing Company policies, rules and guidelines pertaining to business behavior . . . This Code is intended to guide employees on ethical and legal standards of business conduct. The Code does not attempt to cover every

8

> situation. Specific policies can be found in other State Farm resources which complement this Code. You should become familiar with the Code as well as all referenced policies, rules and guidelines because you are expected to adhere to them. Failure to adhere to them will result in disciplinary action as appropriate.

(Doc. 75-17 at pg. 3). The Court finds that the language of the Code of Conduct does not contain clear promissory language such that it does not amount to a contract. The above excerpt shows that it does not so much as confer rights but instead warns employees about conduct or circumstances that will result in termination or other adverse personnel action such that it does not constitute a contract. *See id.* (holding that the employer's code of conduct failed to meet the first prong of the *Duldulao* test and did not constitute a contract where it contained general statements of company policy and guidelines for employee conduct).

As the question whether State Farm's code of conduct is a contract is a purely legal question and because the Court answers that question in the negative, Moore cannot defeat summary judgment on his claim that State Farm violated its internal policies. *See Weber Shandwick*, 2005 WL 1651030, at *3 (identifying the question whether the code of conduct in that case was a contract as a purely legal question). Even if that portion of the Code providing that failure to adhere to the Code and referenced policies, rules, and disciplinary action "*will* result in disciplinary action as appropriate" was viewed as sufficiently clear promissory language to meet the first prong of the contract analysis, the Court finds it would be erroneous to allow Moore to proceed on a breach of contract theory where he clearly takes issue with State Farm's alleged retaliation and discrimination based upon race rather than any disciplinary measures State Farm took against Moore (separate from those he alleges were as retaliation and discrimination based upon his race).

The Code of Conduct does not create a duty separate from those already imposed on the employer by statute, specifically Title VII and the IHRA. *See Patton v. Univ. of Chi. Hosps.*, 706 F. Supp. 627, 629 (N.D. Ill. 1989) (stating defendant's antidiscrimination policy did not create a contract between defendant and its employees where the policy was merely a reiteration of pre-existing legal duty unsupported by consideration); *Svigos v. Petry Television, Inc.*, No. 95 C 5899, 1996 WL 388416, at *3 (N.D. Ill. July 9, 1996) (stating defendant's harassment policy concerning employee's right to work in an environment free of discrimination and harassing conduct merely summarized existing state of the law and thus did not create a duty separate from those already imposed on the employer by statute); *Willis v. Evans Products Co.*, No. 86 C 9111, 1987 WL 11337, at *6 (N.D. Ill. May 14, 1987) (deciding defendants' equal employment opportunity policy statement that it would not discriminate on the basis of age was only a recital of what it was already required to do under the Age Discrimination in Employment Act, thus a restatement of a pre-existing legal duty unsupported by consideration). This Court agrees with the reasoning in *Svigos* as to the possible extension of *Duldulao* to the allegations in this case:

> Illinois courts have extended *Duldulao* beyond the parameters of the at-will employment relationship and have found that employees may have enforceable contract rights to receive certain tangible benefits identified in the applicable handbook . . . These cases, however, are distinguishable from Svigos' claim because they involve the right to a clearly promised property interest, whether it be in the form of compensation or benefits. Svigos, in turn, claims that the handbook creates a contractual right to an intangible working condition that is unrelated to a progressive discipline structure. Svigos has not cited any authority which extends *Duldulao*'s reasoning to create this type of contract right. The court declines to do so, finding such a result to be an unwarranted extension of *Duldulao*'s principles.

*Svigos*, 1996 WL 388416, at *4. This result is only further supported by the undisputed fact that the home page of State Farm's internal policies (those referred to in the Code of Conduct) contain a disclaimer that employees are employed at-will and that State Farm's internal policies do not constitute a contract. *See Freeman v. Chi. Park Dist.*, 189 F.3d 613, 617 (7th Cir. 1999) (deciding nothing more was needed to conclude defendant's employee handbook was not a contract where handbook specifically disclaimed it was a contract and the handbook itself was the best evidence of whether the parties intended to form a contract); *and Hegeler v. Ill. State Toll Highway Auth.*, No. 05 C 2739, 2005 WL 2861051, at *2 ("When a disclaimer is 'clear and forthright,' it is a 'complete defense to a suit for breach of contract based on an employee handbook'"), *citing Workman v. UPS, Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000).

## III

For the foregoing reasons, Defendant State Farm's Motion for Judgment on the Pleadings (Doc. 65) is GRANTED and so Plaintiff Moore's EEOC violation and state law wrongful termination claims are DISMISSED. State Farm's Motion for Summary Judgment (Doc. 67) is also GRANTED on Moore's state law breach of contract claim based upon a violation of State Farm's internal policies. The following claims as articulated in State Farm's Motion for Summary Judgment remain: 1) an alleged Family Medical Leave Act violation; 2) retaliation based upon four instances of State Farm action; and 3) race discrimination based on three instances of State Farm action.

*It is so ordered.*

Entered on February 23, 2018.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE